UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TROOPER RUDOLPH B. BROWN,

Plaintiff,

-against-

SERGEANT CHRISTOPHER WETZ, et al.,

Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: ___3/15/2021___

18cv11178 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

Rudolph B. Brown ("Plaintiff" or "Trooper Brown"), a trooper for the New York State Police ("NYSP"), commenced this action under 42 U.S.C. §§ 1981, 1983, 2000e, and New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296, against Sergeants Christopher Wetz and Richard Weatherwax in their individual and official capacities (the "Individual Defendants"), and the NYSP (collectively, "Defendants") alleging unlawful race and/or color discrimination, hostile work environment, and retaliation. (*See* Complaint (ECF No. 4); First Amended Complaint ("FAC") (ECF No. 12).) Before the Court is Defendants' motion to dismiss. (ECF No. 34.) For the following reasons, Defendants' Motion is GRANTED in part and DENIED in part.

## BACKGROUND

The following facts are drawn from the First Amended Complaint and are assumed to be true for the purposes of this motion.[1]

---

[1] The background facts alleged herein are drawn from Plaintiff's First Amended Complaint and the materials appended thereto. The parties dispute what extrinsic evidence the Court may rely upon to decide this motion. Since courts may, in ruling on motions to dismiss, consider the complaint, "as well as documents incorporated into the complaint by reference," *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007), the Court has considered the First Amended Complaint and materials attached thereto.

I.      **Plaintiff's Allegations**

      A.   *Early Employment by NYSP and Pre-2015 BCI Applications*

Trooper Brown, an African American man, has worked for the NYSP since 1992. (FAC ¶ 16.) In or about September 2013, Trooper Brown requested an appointment to the Bureau of Criminal Investigation ("BCI"). (*Id.* at ¶ 19.) When Trooper Brown subsequently inquired about the status of this application, he was advised that the Captain had not submitted the application to BCI. (*Id.* at 20.) In or about June 2014, the Captain asked Trooper Brown to submit a new application to BCI, which he did. (*Id.*) Trooper Brown had an interview with BCI, which Plaintiff alleges was a "sham." (*Id.* at ¶ 21.) Following this interview, Plaintiff met with the Captain who told Plaintiff that he did not do well on his interview and that the Captain would not authorize a BCI appointment. (*Id.* at ¶ 22.) Plaintiff alleges that, among other things, he "requested that he be assigned to the Traffic Incident Management (["]TIM["]) Unit in Poughkeepsie . . . if BCI was not an option." (*Id.*) In or about August 2014, Trooper Brown was transferred to the TIM Unit as requested. (*Id.* at ¶ 23.)

      B.   *Allegations Regarding Sergeant Wetz (July 2015 to July 2016)*

Beginning in July 2015, Plaintiff was supervised by Sergeant Wetz. (*Id.*) Plaintiff alleges that Sergeant Wetz "fostered an environment of disparate treatment against [Plaintiff] based on his race." (*Id.*)

On or about November 3, 2015, Sergeant Wetz gave Trooper Brown his mid-year review and Plaintiff alleges that "Sergeant Wetz's oral review was remarkably critical." (FAC at ¶ 26.) On the mid-year form, Plaintiff wrote that he does not "believe it's worth while [sic] to pursue professional goals in an environment that does not allow advancement for myself or peers like me." ("2015 Mid-Year Review" (ECF No. 12-4).) During a meeting the next day with Sergeant Wetz, a Captain, and another Sergeant, the Captain asked Plaintiff if he wanted to file an EEO

Complaint, which Trooper Brown declined "for fear that [he] would be retaliated against for making such a complaint." (FAC at ¶ 27.) The Captain then told Plaintiff that—based at least on the ticketing database, which only showed five summonses for the 22 tickets Plaintiff had reported for October 2015, Plaintiff's failure to sign the blotter on several occasions, and his failure to answer certain emails—Plaintiff had performance deficiencies and required administrative supervision by Sergeant Wetz. (*Id.* at ¶ 28.) Plaintiff alleges that he was not allowed to respond to these alleged deficiencies, and informed that Sergeant Wetz would conduct additional supervision with bi-weekly review by the Captain. (*Id.* at ¶ 29.) Plaintiff was also informed that he "could no longer park his vehicle at the NYSP barracks at Wappingers Falls (15 miles from his residence). Instead, he now needed to sign the blotter at the NYSP headquarters in Poughkeepsie (44 miles away) as well as park his patrol car at that location." (*Id.*)

Plaintiff alleges that the note Sergeant Wetz made on Plaintiff's 2015 mid-year review after the meeting—that "Trooper Brown clarified that [the aforementioned statement] was a general statement/opinion, not towards any specific individual or event, nor during his time in the unit"—was self-serving and untrue. (*Id.* at ¶ 30.) Plaintiff further alleges that another trooper told Plaintiff that when he asked Sergeant Wetz why Plaintiff was parking and reporting to duty in Poughkeepsie, Sergeant Wetz laughed and said "You will have to ask [Plaintiff]." (*Id.* at ¶ 31.)

Plaintiff further alleges that the disciplinary charges Sergeant Wetz filed against Plaintiff regarding Plaintiff's November 5, 2015 courtesy transport of his goddaughter from Yorktown (where Plaintiff had a court appearance) to her home in Newburgh was retaliatory because Sergeant Wetz had recently picked up his daughter in his patrol car and brought her to a funeral. (*Id.* at ¶¶ 32-33.) However, when Plaintiff complained to the First Sergeant, the First Sergeant

responded that he had given Sergeant Wetz permission to pick up his daughter in his patrol car. (*Id.* at ¶ 33.)

Plaintiff further alleges that on or about November 19, 2015, Sergeant Wetz yelled at Plaintiff in front of other staff when Plaintiff was in the garage at the Poughkeepsie headquarters. (*Id.* at ¶¶ 34-35.) Approximately the next day, Trooper Brown complained to the First Sergeant about Sergeant Wetz's conduct, including that Sergeant Wetz "continued to yell at him unjustifiably and demean him both in front of co-workers and civilian, and that he was creating a hostile work environment for Trooper Brown." (*Id.* at ¶ 36.) Later that day, Plaintiff was directed to report to headquarters to provide a statement about the November 5, 2015 courtesy transport of his goddaughter. (*Id.*)

On or about December 1, 2015, Plaintiff was discussing the weather with a Caucasian trooper in the TIM Office, when Sergeant Wetz remarked—within Plaintiff's earshot—"the only beans I don't like are black beans, I like every other bean." (*Id.* at ¶ 37) At which time, the other trooper said "Hey Sarge, that's kind of racist." (*Id.*) Trooper Brown alleges that he was offended by Sergeant Wetz's comment but did not say anything. (*Id.*)

On or about December 20, 2015, Trooper Brown filed an EEO complaint alleging race discrimination and retaliation between November 3, 2015 and December 20, 2015. (FAC at ¶ 38; "December EEO Complaint" (ECF No. 12-5).) Specifically, Plaintiff's complaint states that since the statement in his mid-year performance review that he did not "believe its' worth while [sic] to pursue professional goals in an environment that does not allow advancement for myself or peers like me," by which he "mean[t] . . . race/ black people on this job," Sergeant Wetz and the Captain treated him unfairly including by making him park at and report to Poughkeepsie instead of a

closer facility, by disciplining him for providing his goddaughter a courtesy transport, and by yelling at him and talking down to him. (*Id.*)

On December 21, 2015, Trooper Brown wrote to the First Sergeant noting that despite the Captain's previous directive that Sergeant Wetz would be evaluating his administrative duties biweekly to evaluate his return to Wappingers Falls barracks, Plaintiff had not received any feedback regarding his performance. (*Id.* at ¶ 39.) By email dated December 22, 2015—which Plaintiff alleges was "self-serving"—Sergeant Wetz stated that he had been providing daily feedback to Trooper Brown and did not address when or whether Plaintiff would be permitted to park at and report to the Wappingers Falls barracks again. (*Id.* at ¶ 40.)

Plaintiff further alleges that when Sergeant Wetz solicited vacation dates on or about January 20, 2016, a process typically based on seniority, Trooper Brown, who was third in line by seniority, was required to re-pick dates when another trooper requested the same vacation date. (*Id.* at ¶ 41.) Even though Sergeant Wetz told Plaintiff he could pick a different date, Plaintiff decided to bank the vacation rather than pick a different date because choosing a different date would case a "significant disruption in the vacation schedule for the unit." (*Id.*) Sergeant Wetz directed Plaintiff to write an email confirming his desire to bank his vacation days, which Plaintiff did, and had to re-do after Sergeant Wetz claimed that Plaintiff's description of the vacation scheduling incident was inaccurate. (*Id.* at ¶ 42.) After Sergeant Wetz yelled at Plaintiff in front of junior troopers, Plaintiff again re-wrote his email and left the barracks visibly upset. (*Id.*)

On or about February 8, 2016, Trooper Brown was suspended without pay for four days and censured based on his November 5, 2015 courtesy transport of his goddaughter. (*Id.* at ¶ 43.)

On February 17, 2016, Sergeant Wetz gave Trooper Brown his 2015 annual performance review during which Sergeant Wetz criticized Trooper Brown for his traffic enforcement efforts

despite the fact that Plaintiff led the unit in distracted driver enforcement and was meeting expectations in his review. (*Id.* at ¶ 44.) On or about March 5, 2016, Sergeant Wetz wrote to Trooper Brown that Trooper Brown was not in line with his peers in issuing tickets in February 2016. (*Id.* at ¶ 45.) Plaintiff alleges that a Caucasian trooper whose prior monthly ticket issuance was also down, was merely told that it was an anomaly. (*Id.*)

On March 23, 2016, Sergeant Wetz yelled at Trooper Brown for accruing overtime during a court appearance, even going so far as to confirm with the presiding justice in Yorktown town court whether the delay in the case requiring Plaintiff's additional time was necessary. (*Id.* at ¶ 46.) Plaintiff alleges that he had never received any prior complaints about his overtime. (*Id.*)

Plaintiff further alleges that on April 6, 2016, during an assignment on a work zone, Sergeant Wetz required Trooper Brown to remain on the work zone without sufficient time to return to headquarters, and therefore Plaintiff had to use an hour and a half of his flex time, while on the same day and in the same vicinity, two Caucasian troopers were told to leave their assigned work sites early so they could return to headquarters without using their flex time. (*Id.* at ¶ 47.)

On April 8, 2016, Sergeant Wetz issued the spring firearms schedule, according to which Trooper Brown was scheduled on Monday with junior officers, which Plaintiff alleges "deviat[ed] from the customary firearms schedule based on seniority" under which the other "senior officers in the unit were assigned to the range on Fridays." (*Id.* at ¶ 48.) When Plaintiff questioned this change, Sergeant Wetz simply responded that was schedule. (*Id.*)

On or about April 13, 2016, Sergeant Wetz criticized Trooper Brown for not having issued sufficient tickets in March 2016. (*Id.* at ¶ 49.) Plaintiff alleges that he had written eleven tickets in four days on patrol because he was required to do thirty-two truck inspections that month. (*Id.*)

On April 14, 2016, Trooper Brown was interviewed at the Internal Affairs Southern Regional Office concerning his December 2015 EEO Complaint. (*Id.* at ¶ 50; *see* ECF No. 12-6.) The Investigation did not result in any corrective action. (FAC at ¶ 50.)

On April 19, 2016, Sergeant Wetz again complained to Trooper Brown about his overtime numbers. (*Id.* at ¶ 51.) On June 17, 2016, Sergeant Wetz required Trooper Brown to write a memorandum to the Major for oversleeping—the only time Plaintiff had overslept in twenty-three years on the job. (*Id.* at ¶ 52.)

In or about July 2016, Sergeant Kara replaced Sergeant Wetz as Plaintiff's supervisor and "in stark contrast to Sergeant Wetz's criticism, noted on Trooper Brown's 2016 mid-year review on August 26, 2016, that Trooper Brown's traffic enforcement activity was on par with other members of the TIM detail." (*Id.* at ¶ 53.)

## C.  *Allegations Regarding Sergeant Weatherwax (Beginning Late 2016)*

Plaintiff's First Amended Complaint does not specify when, but it suggests that at some point Plaintiff was permitted to resume reporting to and parking at the Wappingers Falls barracks. In late 2016, Sergeant Richard Weatherwax was a line sergeant at the Wappingers Falls barracks. (*Id.* at ¶ 54.) Sergeant Weatherwax became the Station Commander in 2017. (*Id.*) Plaintiff alleges that that under Sergeant Weatherwax "the disparate treatment towards Trooper Brown continued." (*Id.*)

Plaintiff took disability leave from late 2017 through March 6, 2018. (*Id.* at ¶¶ 54-55.) Plaintiff alleges that while he was on leave, his locker was moved to the station garage and his mail folder was moved to the back even though the mail is supposed to be organized alphabetically. (*Id.* at ¶ 55.) Upon his return from leave, Plaintiff moved his mail folder to the appropriate alphabetical space but that when he returned from his shifts is was repeatedly re-placed in the back of the line, "signaling that he was less than equal." (*Id.*) Plaintiff further alleges that when he

returned from leave, the "disparate conduct . . . continued unabated and only worsened" (*id.* at ¶ 56) when, for example his uniforms went missing and then, after Plaintiff had gotten new uniforms from headquarters at Sergeant Kara's direction, the original uniforms "suddenly appeared" (*Id.* at ¶ 55). Plaintiff additionally alleges that when he arrived at work on May 21, 2018, the lug nuts on his patrol vehicle had been intentionally loosened. (*Id.* at ¶ 56.) When Plaintiff raised concerns that the aforementioned treatment was based on his race and posed an obvious safety concern, Sergeant Kara suggested that Plaintiff park at the Fishkill barracks instead of the Wappingers Falls barracks. (*Id.*) Sergeant Kara spoke to the Major about having the surveillance unit look into the issues, but Sergeant Weatherwax "deemed [it] trivial . . . failed to investigate the incident, and instead allowed such conduct to persist." (*Id.*)

On August 22, 2018, Plaintiff's counsel wrote to the NYSP Superintendent requesting that he intervene to end the pattern and practice of racial discrimination and retaliation against Trooper Brown and received no response. (*Id.* at ¶ 59.) A September 26, 2018 letter again requesting that the NYSP take remedial measures was not answered either. (*Id.* at ¶ 60.)

On February 26, 2019, Trooper Brown was given his 2018 annual performance rating of "satisfactory." (*Id.* at ¶ 61; "2018 Performance Review" (ECF No. 12-7).) The review indicates that Plaintiff's professional goal is "[t]o be appointed to BCI." (*Id.*)

## II.    Procedural History

Plaintiff filed his EEOC charge on November 28, 2018.[2] (Ex. A to Collins Decl. in Supp. of Mot. to Dismiss ("EEOC Charge") (ECF No. 36-1).) Plaintiff filed this action on November 30,

---

[2] Plaintiff does not mention the EEOC Charge in or attach it to his First Amended Complaint, but he does attach the EEOC's right to sue letter, which was issued in response to Plaintiff's Charge. (*See* "EEOC Notice" (ECF No. 12-1).) Instead, Defendants filed the EEOC Charge in support of their motion. (ECF No. 12-1.) Nevertheless, Plaintiff admits that he filed his EEOC Charge on November 28, 2018, citing to Defendant's exhibit (Opp'n Mem at 3), so the Court's use of the date indicated on the EEOC Charge and omitted from Plaintiff's First Amended Complaint is appropriate.

2018. (ECF Nos. 1-4.) The EEOC issued its right to sue notice on February 19, 2019, and Plaintiff received the notice on February 25, 2019. (FAC ¶ 14; *see* "EEOC Notice" (ECF No. 12-1).) Plaintiff filed the First Amended Complaint on May 15, 2019. (ECF No. 12.) The Court subsequently granted Defendants leave to file their motion to dismiss. (ECF No. 25.) That motion was submitted on July 2, 2020 (ECF No. 34; *see* Mem. in Supp. (ECF No. 35) and Reply Mem. (ECF No. 39); Opp'n Mem. (ECF No. 37).

## STANDARD OF REVIEW

Under Rule 12(b)(6), the inquiry for motions to dismiss is whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. The Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, but the Court is "'not bound to accept as true a legal conclusion couched as a factual allegation,'" or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). In determining whether a complaint states a plausible claim for relief, a district court must consider the context and "draw on its judicial experience and common sense." *Id*. at 679. A claim is facially plausible when the factual content pleaded allows a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

## DISCUSSION

Plaintiff alleges that the NYSP discriminated against Plaintiff on the basis of his race and/or color and then retaliated against him for challenging that discrimination in violation of Title VII and that Sergeants Wetz and Weatherwax, individually and in their official capacities,

discriminated against Plaintiff and created a hostile work environment on the basis of his race and/or color, and then retaliated against him for challenging the discrimination, in violation of Sections 1981 and 1983 and the NYSHRL.[3]

## I.      Title VII Claims Against NYSP

Title VII provides that an employer may not "refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's race" or any other protected characteristic. 42 U.S.C. § 2000e2(a)(1).

### A.   Exhaustion and Timeliness

Before an aggrieved party can assert a Title VII claim in federal court, he is required to exhaust the administrative remedies provided by the statute. *See Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 384 (2d Cir. 2015). That is, a Title VII plaintiff must file a charge of discrimination with the EEOC "within three hundred days after the alleged unlawful employment practice occurred," 42 U.S.C. § 2000e-5(e)(1),7 and must then file an action in federal court within 90 days of receiving a right-to-sue letter from the agency, *id.* § 2000e-5(f)(1). "This statutory requirement is analogous to a statute of limitations." *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 712 (2d Cir. 1996).

In certain cases, statutes of limitations may be extended under the continuing violations doctrine. "To trigger the continuing violation doctrine when challenging discrimination, the

---

[3] While Plaintiff does not use the term "hostile work environment" within any of the six enumerated causes of action, Plaintiff uses the term "hostile work environment" within the First Amended Complaint to describe the effect of Sergeant Wetz's alleged discrimination on Plaintiff (*e.g.* FAC ¶ 36 (stating that on or about November 20, 2015 Plaintiff complained to the First Sergeant that Sergeant Wetz's conduct "was creating a hostile work environment for Trooper Brown"); *id.* at ¶ 38 (noting that the December 2015 EEO complaint describes Plaintiff's allegation that Sergeant Wetz was creating a "a hostile work environment")). Additionally, Plaintiff avers that hostile work environment is one of the two theories of discrimination alleged. (Opp'n Mem. at 16.) For clarity, the Court will analyze the hostile work environment claim separately from the discrimination claim.

plaintiff 'must allege both the existence of an ongoing policy of discrimination and some non-time-barred acts taken in furtherance of that policy.'" *Shlomo v. City of New York*, 579 F.3d. 176, 181 (2d Cir. 2009) (quoting *Harris,* 186 F.3d at 250). In other words, "if 'any act falls within the statutory time period,' we need 'to determine whether the acts about which an employee complains are part of the same actionable hostile work environment practice.'" *McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 76 (2d Cir. 2010) (quoting *Morgan,* 536 U.S. at 120))."If a continuing violation is shown, a plaintiff is entitled to have a court consider all relevant actions allegedly taken pursuant to the employer's discriminatory policy or practice, including those that would otherwise be time barred." *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 713 (2d Cir. 1996).

Here, Plaintiff filed his EEOC charge on November 28, 2018.[4] ("EEOC Charge; Opp'n Mem. at 3.) Since an EEOC charge must be filed within three hundred days of an allegedly unlawful employment action, the EEOC charge Plaintiff filed is timely only as to events that occurred between February 1, 2018 and November 28, 2018. In other words, Plaintiff's allegations under Title VII can only be considered as to those wrongful acts which occurred from March 6, 2018, when he returned to work from his leave of absence, to November 28, 2018. Any allegations under Title VII regarding events that occurred prior to February 1, 2018 are time-barred. Thus, the Title VII claims regarding events prior to July 2016—the entire period of supervision by Sergeant Wetz—are time-barred. *McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 75 (2d Cir. 2010) (citing *Morgan,* 536 U.S. at 114.)

Plaintiff alleges that the continuing violation doctrine applies to his Title VII claims. However, to the extent he claims that he was subjected to a hostile work environment that began before the limitation period and continued during the limitation period, the gap in alleged

---

[4] That Plaintiff received his right to sue letter after filing the complaint here does not change the fact that Title VII requires complaints to be made within 300 days of the allegedly unlawful events.

discrimination between July 2016 and March 2018, a period of twenty-one moths, suggests that any hostility was not related. Of significance, the only supervisor Plaintiff alleges made any racist comment, Sergeant Wetz, stopped supervising Plaintiff in 2016, well before the limitations period. Plaintiff's cursory allegation that any hostile work environment continued into the limitations period is insufficient to allege that any hostile work environment prior to the limitations period is related to any alleged hostility during the limitations period. Accordingly, the continuing violations doctrine does not save his untimely Title VII claims.

To the extent that Plaintiff contends that NYSP denied his appointment to BCI on a continuous or ongoing basis beginning years before the limitation period and continuing during that period, his contention fails. Plaintiff alleges that he was required to submit an application for such an appointment in 2014, which was denied following an interview. Plaintiff's failure to allege either that he re-applied or that such re-application was not required is insufficient to trigger the continuing violation doctrine.[5] *See Brown v. Coach Stores, Inc.*, 163 F.3d 706, 710 (2d Cir. 1998) (holding that to state a claim for failure to promote, a plaintiff must "allege that she or he applied for a specific position or positions and was rejected therefrom, rather than merely assert[] that on several occasions she or he generally requested promotion"); *see also Smith v. City of New York*,

---

[5] Even if Plaintiff had alleged that he requested appointment after 2014, "[f]ailures to promote or transfer are discrete acts, and '[e]ach incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" *Edwards v. N.Y. Unified Court Sys.*, No. 12 CIV. 46 WHP, 2012 WL 6101984, at *3 (S.D.N.Y. Nov. 20, 2012) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002)).To the extent that Plaintiff avers that he is not merely arguing failure to promote but instead arguing that BCI appointment would open other opportunities for him, any argument premised on the failure to appoint Plaintiff to the BCI must fail where Plaintiff alleges that in 2014 he was required to submit a formal application, which was denied, and then fails to allege either that he submitted an additional application or that subsequent application was not required.

Moreover, even if Plaintiff had sufficiently alleged that the failure to appoint constituted an adverse action, neither Plaintiff's cursory allegation (FAC at ¶ 61) nor his attachment to the First Amended Complaint of a list of BCI appointments from October 21, 2014 through August 2017, which contains no information about the races or other particulars of the appointees (Plaintiff alleges, based on a list of BCI appointments from October 21, 2014 through August 2017 ("Appointments List" (ECF No. 12-8)), is sufficient to raise an inference that Plaintiff was not appointed because of Plaintiff's race.

385 F. Supp. 3d 323, 337 (S.D.N.Y. 2019) (holding that plaintiff did not suffer adverse employment action where he "presented no evidence that he ever applied for a 'discretionary promotion'"); *Barrett v. Forest Labs., Inc.*, 39 F. Supp. 3d 407, 442 (S.D.N.Y. 2014) (dismissing failure-to-promote claims because the plaintiffs failed to allege "that they were interested in a promotion or that there was an open position to which they could have (or would have) applied").

That Plaintiff alleges no discriminatory incidents other than the allegedly ongoing failure to appoint him to the BCI between July 2016 and March 2018 provides strong support that any alleged violations do not "collectively constitute one unlawful employment practice" beginning before and continuing into the limitations period. *Washington*, 373 F.3d at 318. Accordingly, the Court may only consider Title VII claims to the extent that the complained-of events occurred during the limitations period.

To the extent that Plaintiff claims retaliation based on Plaintiff's filing of an EEO Complaint on or about December 20, 2015, Plaintiff has made no allegation that any alleged retaliation for that Complaint continued into the limitations period, the Title VII retaliation claim must be dismissed as untimely. Plaintiff's conclusory allegation that Sergeant Weatherwax was aware of an EEO Complaint that Plaintiff filed years prior is insufficient to link any acts alleged to have occurred during the limitation period to Plaintiff's filing of an EEO Complaint in December 2015. Accordingly, the Court must dismiss Plaintiff's Title VII retaliation claim in its entirety.

In sum, the Court must dismiss Plaintiff's Title VII retaliation claim in its entirety and will only consider allegations of employment discrimination against NYSP to the extent that the alleged discrimination occurred on or after February 1, 2018.

### B.  *Sufficiency of Timely Title VII Claims*

Even if the Title VII claim for race-based employment discrimination is timely, Plaintiff has failed to state a plausible claim. Title VII claims—including claims for discrimination and retaliation—are analyzed pursuant to *McDonnell Douglas* burden-shifting framework. *Littlejohn*, 795 F.3d at 315. Under that framework, a "[c]omplainant has the initial burden of proving a *prima facie* case of discrimination, the burden then shifts to the employer to articulate a legitimate nondiscriminatory reason for its action and, finally, complainant must show that the employer's stated reason was pretextual." *Ibrahim v. N.Y. Dep't of Health*, 904 F.2d 161, 165 (2d Cir. 1990).

To state a claim for race-based discrimination against a state employer, a Plaintiff must allege: (1) that he is a member of a protected class; (2) that he was qualified for the position he held; (3) that he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent. *Holcomb v. Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008). Plaintiff meets the first two elements because he alleges that is African American and qualified for his position as a state trooper. While Plaintiff avers that he has sufficiently stated that NYSP intentionally discriminated against him as part of a larger unlawful policy against African Americans and created a hostile work environment for Plaintiff, Defendants contend that Plaintiff has failed to allege any timely claim of discrimination against NYSP. The Court agrees with Defendants.

Plaintiff alleges that he continued to be subjected to discrimination and a hostile work environment on the basis of his race within the limitations period because racial animus can be imputed to Sergeant Weatherwax who was in charge when Plaintiff continued to not be appointed to BCI and when he suffered various discriminatory treatment after he returned from leave in March 2018. (FAC ¶ 54). Even assuming that Plaintiff alleges adverse employment actions during this period, he makes no allegations from which an inference of discrimination can be inferred.

The only explicitly racist comment alleged was made by Sergeant Wetz in December 2015, well before the limitations period, and Plaintiff has made no allegation that Sergeant Weatherwax or any other NYSP employee mistreated Plaintiff because of his race or that anyone treated similarly situated non-African American colleagues differently during the limitations period.

Accordingly, the Court must dismiss Plaintiff's Title VII claims against NYSP in their entirety.

## II.    Section 1983 and NYSHRL Claims

The Court next considers Plaintiff's claims against Sergeants Wetz and Weatherwax under Section 1983 and the NYSHRL.[6] Section 1983 provides, in relevant part: "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. In order to state a claim that a specific defendant is liable under Section 1983, a plaintiff must allege (a) that the defendant is a "person" acting "under the color of state law," and (b) that the defendant caused the plaintiff to be deprived of a federal right. *See, e.g., Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 122 (2d Cir. 2004). "[S]tate employment is generally sufficient to render the defendant a state actor." *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 935 n. 18 (1982). Notably, since "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*[,] . . . . a

---

[6] Defendants aver that Plaintiff mistakenly cites Section 196(1) instead of Section 196(6) while alleging individual liability against Sergeants Wetz and Weatherwax. (Reply Mem. at 14.) While the NYSHRL does refer to "employers," "[a] supervisor is an 'employer' for purposes of establishing liability under the NYSHRL if that supervisor 'actually participates in the conduct giving rise to [the] discrimination.'" *Feingold v. New York*, 366 F.3d 138, 157 (2d Cir. 2004); *see also N.Y. Div. of Human Rights v. ABS Elecs., Inc.*, 958 N.Y.S.2d 502, 504 (2d. Dep't 2013) (holding that individual liability can only be imposed under the NYSHRL if that individual defendant had "any power to do more than carry out personnel decisions made by others") (citing *Patrowich v. Chem. Bank*, 63 N.Y.2d 541, 542 (1984)). Accordingly, because Sergeants Wetz and Weatherwax held supervisory positions and Plaintiff alleges that they had authority over him, they may be sued as "employers" under NYSHRL.

plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the [law]." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

Since Plaintiff sued both Individual Defendants in their individual as well as official capacities, the Court notes that officers may only be held liable under § 1983 in their official capacities where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted or promulgated by those whose edicts or acts may fairly be said to represent official policy. In addition, local governments, like every other § 1983 'person,' may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such custom has not received formal approval through the government's official decision-making channels." *Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658, 659 (1978).

Section 1981 provides, in relevant part, "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." 42 U.S.C. § 1981. "[T]he express cause of action for damages created by § 1983 constitutes the *exclusive federal remedy* for violation of the rights guaranteed in § 1981 by state governmental units." *Duplan v. City of New York*, 888 F.3d 612, 619 (2d Cir. 2018) (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733(1989)); *see also Littlejohn*, 795 F.3d at 316 n.14 (noting that Section 1981 encompasses retaliation claims based on complaints of racial discrimination).

The NYSHRL provides that employers may not "refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in

compensation or in terms, conditions or privileges of employment" on the basis of a protected characteristic such as race or color. N.Y. Exec. Law § 296(1)(a).

    A. *Timeliness*

    As a preliminary matter, the statute of limitations for Plaintiff's claims under Section 1983 and the NYSHRL is three years. *Duplan*, 888 F.3d at 619-21. Since Plaintiff commenced this action on November 30, 2018, any claims concerning events prior to November 30, 2015 are untimely. Plaintiff argues that any time-barred claims against Sergeants Wetz and Weatherwax should nonetheless be considered under the continuing violations doctrine.[7] The Court agrees. Plaintiff alleges that he filed an EEO Complaint in December 2015—within the limitations period—and that Complaint describes allegedly discriminatory actions by Sergeant Wetz and others against Plaintiff between the time that Sergeant Wetz became Plaintiff's supervisor in July of 2015 and November 30, 2015, the beginning of the limitations period, in addition to discriminatory behavior that occurred during the limitations period. Because Plaintiff alleges that Sergeant Wetz subjected Plaintiff to a hostile work environment prior to and continuing into the limitations period, the Court will consider the sufficiency of all of Plaintiff's allegations against Sergeant Wetz. *See, e.g.*, *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002) (noting that hostile environment claims are, by definition, claims of continuing violation); *see Davis-Garett v. Urban Outfitters, Inc.*, 921 F.3d 30, 42 (2d Cir. 2019) (holding that entirety of age discrimination hostile work environment claim was timely even though alleged conduct began before the limitation period). Since all of the allegations against Sergeant Weatherwax are within the limitations period, the Court will consider those as well.

---

[7] With respect to the Section 1983 claims, Plaintiff argues that because his claims relate to post-hiring racial discrimination and retaliation under Section 1981, they are subject to a four-year statute of limitations. (Opp'n Mem. at 32.). The Second Circuit squarely rejected this argument in *Duplan*. 888 F.3d at 619-21.

B.  *Sufficiency of Timely Section 1983 and NYSHRL Claims*

Like Title VII claims, employment discrimination claims brought under Section 1983 and the NYSHRL are analyzed under the framework established in *McDonnell Douglas*, 411 U.S. at 802-04. *Tolbert v. Smith*, 790 F.3d 427, 434 (2d Cir. 2015); *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 123 (2d Cir. 2004).

i.   Employment Discrimination

To make a *prima facie* employment discrimination claim a plaintiff must allege that (1) he belonged to a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent. *Tolbert*, 790 F.3d at 436. "[A]bsent direct evidence of discrimination, what must be plausibly supported by facts alleged in the complaint is that the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015).

Plaintiff meets the first two elements of the prima facie case for his employment discrimination claims because he alleges that he is African American and was qualified for his position as a state trooper. Defendants contend, however, that Plaintiff has failed to allege that he suffered any adverse employment action or that any mistreatment raises an inference of discrimination.

"An adverse employment action is more disruptive than a mere inconvenience or an alteration of job responsibilities. It is a *materially significant disadvantage* with respect to the terms of the plaintiff's employment." *Littlejohn*, 795 F.3d at 311 n.10 (internal quotation marks, alterations, citations omitted); *accord Shultz v. Congregation Shearith Israel of N.Y.C.*, 867 F.3d

18

298, 304 (2d Cir. 2017). "Examples of materially significant disadvantages include termination, demotion, a less distinguished title, a material loss of benefits, or significantly diminished material responsibilities." *Id.* (internal quotation marks, alterations, citations omitted). "An inference of discrimination can arise from circumstances including, but not limited to, 'the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's [adverse employment action].'" *Littlejohn*, 795 F.3d at 312 (quoting *Leibowitz v. Cornell Univ.,* 584 F.3d 487, 502 (2d Cir. 2009)).

The Court addresses Plaintiff's discrimination claims against Sergeants Wetz and Weatherwax in turn.

### *1. Sergeant Wetz*

Plaintiff alleges that Sergeant Wetz treated Plaintiff differently than Plaintiff's non-African American colleagues based on his race and that as a result, Plaintiff suffered multiple discrete adverse employment actions including (1) failure to promote Plaintiff to the BCI, (2) negative performance reviews and criticism, including requiring Plaintiff to memorialize certain incidents in writing; (3) reassignment of Plaintiff's parking and reporting to a more distant location, and unfavorable work site assignments; (4) departing from seniority when scheduling vacation and firearms schedule; and (5) disciplining Plaintiff for providing a courtesy transport without permission. However, none of these are adverse employment actions.

First, as previously stated, failure to appoint Plaintiff to BCI where Plaintiff has not alleged that he applied for that appointment after he was denied in 2014 or that such renewed application was no longer required does not constitute an adverse employment action. *Brown*, 163 F.3d at 710.

Second, the negative performance evaluations, job critiques, failure to provide bi-weekly evaluation, and reprimands "qualify as adverse employment actions only if they are accompanied by negative consequences, such as demotion, diminution of wages, or other tangible loss," which Plaintiff has not alleged. *Smith v. City of New York*, 385 F. Supp. 3d 323, 334 (S.D.N.Y. 2019) (internal quotation marks omitted); *Siddiqi v. N.Y.C. Health & Hosp. Corp.*, 572 F. Supp. 2d 353, 367-68 (S.D.N.Y. 2008) ("The mere fact of a negative evaluation does not constitute discrimination.").

Third, inconveniences such as a further commute and unfavorable work assignments, "do not rise to the level of adverse employment actions [unless they] have a material impact on the terms and conditions of Plaintiff's employment," which Plaintiff has not alleged. *Smalls v. Allstate Ins. Co.*, 396 F. Supp. 2d 364, 371 (S.D.N.Y. 2005); *see also Felder v. Madison Square Garden*, No. 15CV4038 (GBD) (DF), 2018 WL 1872061, at *9 (S.D.N.Y. Jan. 29, 2018) ("[E]ven where a plaintiff's assignment is 'inconvenient' or 'unfavorable,' it will not be found to constitute a material, adverse action for purposes of Title VII where the work assignment does not 'radically change' the nature of the work, is consistent with the duties of the plaintiff's position, and offers no diminishment in compensation, employment benefits, seniority status, or responsibilities."), *report and recommendation adopted*, No. 15CIV4038GBDDF, 2018 WL 1089743 (S.D.N.Y. Feb. 26, 2018); *Ward v. Shaddock*, No. 14-cv-7660, 2016 WL 4371752, at *5 (S.D.N.Y. Aug. 11, 2016) (collecting cases and holding that plaintiff's allegations that he was "given tasks and assignments not commensurate with his status as a long-term DOT employee," such as "assign[ment]to the less desirable evening shift," getting reassigned to use a less desirable truck or no vehicle at all, and being given "menial tasks normally given to lower-grade employees"

were insufficient to constitute "materially adverse change[s] in the terms and conditions of employment" and were instead "mere inconvenience[s]".)

Fourth, the scheduling complaints are not material adverse employment actions where Plaintiff has alleged only changes in scheduling and not deprivation of vacation or firearms training. *See, e.g.*, *Chukwuka v. City of New York*, 795 F. Supp. 2d 256, 261 (S.D.N.Y. 2011) ("[T]he denial of vacation time does not generally rise to the level of an adverse employment action. Moreover, the denial of a single vacation request, without any indication that there was an absolute prohibition against Plaintiff taking any vacation time, is not a material adverse employment action." (internal quotation marks and citation omitted)), *aff'd*, 513 F. App'x 34 (2d Cir. 2013) (summary order); *Ortiz v. Metro. Transportation Auth.*, No. 13-CV-1033 (VSB), 2014 WL 11460929, at *8 (S.D.N.Y. Sept. 30, 2014) ("When an employee cannot show material harm from a denial of training, such as a failure to promote or a loss of career advancement opportunities, there is no adverse employment action."), *aff'd sub nom. Ortiz v. Metro. Transp. Auth.*, 615 F. App'x 702 (2d Cir. 2015) (summary order).

Fifth, the disciplinary action for providing a courtesy transport without prior authorization is not an adverse employment action because "an employee does not suffer a materially adverse change in the terms and conditions of employment where the employer merely enforces its preexisting disciplinary policies in a reasonable manner" *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012).

Because Plaintiff has not alleged that Sergeant Wetz subjected him to any adverse employment action, the Court must dismiss his employment discrimination claim against Sergeant Wetz.

## 2. Sergeant Weatherwax

Plaintiff alleges that when he returned from medical leave, he was subject to various disparate treatment, including relocation of his locker to the garage and tampering with his mail, uniform, and patrol vehicle and that Sergeant Weatherwax declined to have the surveillance unit investigate these incidents. Plaintiff's discrimination claims against Sergeant Weatherwax similarly fail.

As a preliminary matter, none of these incidents amounts to an adverse employment action. *Avillan v. Donahoe*, 483 F. App'x 637, 638 (2d Cir. 2012) (noting among list of "minor workplace inconveniences" that do not constitute adverse employment action "having his custodial route reassigned and having personal items removed from a locker"). Even if he had alleged that adverse employment actions were taken against him while Sergeant Weatherwax was in charge, Plaintiff has failed to allege that any of these actions resulted from racial bias or animus. In fact, the only allegation of a racist comment was made by Sergeant Wetz in December of 2015 and Plaintiff alleges no basis for ascribing any racist animus to Sergeant Weatherwax or any other NYSP official. Accordingly, Plaintiff's discrimination claims against Sergeant Weatherwax must be dismissed.

## ii.   Hostile Work Environment

To establish a prima facie case of a hostile work environment, a plaintiff must allege that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," and that such mistreatment occurs "because of [the victim's] protected characteristic." *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 20 (2d Cir. 2014) (internal quotation marks, alterations, and citations omitted); *accord Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007); *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002).

*1.  Sergeant Wetz*

Plaintiff alleges that during the year that Sergeant Wetz supervised him—from July 2015 through July 2016—Sergeant Wetz routinely subjected Plaintiff to differential treatment including negative performance reviews and criticism for job performance deficiencies that were excused for other, non-African American employees; reprimanded Plaintiff in front of other employees without basis; forced Plaintiff but not white employees to use "flex time" for assignments; and broke with seniority assignment systems for Plaintiff's vacation and firearm schedules. Plaintiff further alleges that the Captain relocated Plaintiff's reporting and parking assignment to a barracks further from Plaintiff's home and that Sergeant Wetz failed to undertake the required supervision to permit Plaintiff to return to the Wappingers Falls barracks, which were closer to his home. The Court finds that Plaintiff has sufficiently alleged that mistreatment by Sergeant Wetz is severe or pervasive that, taken together, it materially altered Plaintiff's conditions of employment, including his "daily working conditions." *Terry v. Ashcroft*, 336 F.3d 128, 149 (2d Cir. 2003) (dismissing motion for summary judgment on hostile work environment claim where, inter alia, plaintiff alleged that co-workers were told not to speak to plaintiff, supervisors told co-workers that plaintiff was "nuts" and a coworker broke into plaintiff's desk and discarded some of plaintiff's belongings).

That said, Plaintiff has only stated a claim against Sergeant Wetz in his individual capacity because Plaintiff has failed to allege that the hostile work environment perpetrated by Sergeant Wetz was part of a government custom or policy. The only policy with which Plaintiff seems to take issue is an alleged failure to promote African Americans; however, as previously stated, Plaintiff has not alleged failure to promote where he neither alleges that he reapplied following the 2014 denial of his BCI appointment request nor alleges that such reapplication was unnecessary.

The Court also finds that Plaintiff's allegations are sufficient to raise an inference that Sergeant Wetz engaged in this mistreatment against Plaintiff because of Plaintiff's race. First, Plaintiff alleges that Sergeant Wetz made a racist comment in his presence and, a Plaintiff may rely on incidents of discriminatory animus to show that other ostensibly neutral conduct was, in fact, based on Plaintiff's membership in a protected class. *See Raniola,* 243 F.3d at 621-22; *see also Howley v. Town of Stratford,* 217 F.3d 141, 156 (2d Cir.2000) (holding that a rational jury could infer that facially-neutral abuse was sex-based because perpetrator had previously made several sexually-derogatory statements). Second, Plaintiff alleges that in many of the instances of mistreatment, Plaintiff was treated differently than non-African American colleagues. For example, Plaintiff was required to use "flex time" on a day when two white colleagues posted nearby were not, and Sergeant Wetz told Plaintiff during his 2015 year-end review and with respect to his February 2016 ticketing record that his performance was unacceptable, whereas a white colleague whose ticketing was also down was told that it was an anomaly.

Accordingly, the Court finds that Plaintiff has stated a claim for hostile work environment against Sergeant Wetz in his individual capacity.

## 2. *Sergeant Weatherwax*

Plaintiff alleges that he was also subjected to disparate treatment under Sergeant Weatherwax's watch when he returned from leave in 2018 to find that his locker was moved to the garage, and then his mail was repeatedly taken out of alphabetical order, his uniform was hidden, and the lug nuts were loosened on his patrol vehicle. These allegations are insufficient to state a claim of hostile work environment against Sergeant Weatherwax.

First, none of the alleged 2018 actions, even taken together, are sufficiently severe or pervasive to alter the terms of Plaintiff's employment, especially when Plaintiff's Supervisor

responded to Plaintiff's complaints by offering Plaintiff the option to park at and report to a different barracks. *See, e.g.*, *Figueroa v. City of New York*, 118 F. App'x 524, 525 (2d Cir. 2004) (holding that "five potentially inappropriate comments, two pranks, a few acts of mistreatment of her property and threats of violence, and at least ten adverse personnel decisions" over a six-year period did not constitute a hostile work environment); *Vale v. Great Neck Water Pollution Control Dist.*, 80 F. Supp. 3d 426, 434-35 (E.D.N.Y. 2015) (holding that plaintiff failed to show adverse action where, upon return from leave, "her papers were disrupted, personal items were missing, and the lock to her desk draw [sic] had been broken"). Second, even if Plaintiff had alleged severe or pervasive mistreatment, he has failed to allege that any of the mistreatment was based on his race or that Sergeant Weatherwax was personally involved in any of the alleged mistreatment, other than declining to assign the surveillance unit to investigate, which, is insufficiently severe to constitute a hostile work environment or adverse action on its own. Accordingly, Plaintiff has not stated a hostile work environment claim against Sergeant Weatherwax.

### iii.   Retaliation

To establish a presumption of retaliation at the pleading stage, a plaintiff must allege "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Littlejohn*, 795 F.3d at 315. "[T]he allegations in the complaint need only give plausible support to the reduced prima facie requirements that arise under *McDonnell Douglas* in the initial phase of a Title VII litigation." *Id.* at 315.

#### 1.   Sergeant Wetz

Plaintiff alleges that after he filed his EEO complaint in or around December 20, 2015, multiple discriminatory actions were taken against him; however, even if these incidents occurred

after Plaintiff filed his EEO Complaint, none of these incidents constitute adverse employment actions for which retaliatory motive can be inferred.

First, nothing about the vacation or firearms training scheduling incidents constitute an adverse employment action where Plaintiff was neither deprived of vacation time nor firearms training, even if factors other than seniority were considered in scheduling determinations. *See, e.g.*, *Chukwuka*, 795 F. Supp. 2d at 261 (noting that "the denial of a single vacation request, without any indication that there was an absolute prohibition against plaintiff taking any vacation time, is not a material adverse employment action"); *Ortiz*, 2014 WL 11460929, at *8 (holding that denial of training is not adverse action without allegation of resulting "material harm . . .such as a failure to promote or a loss of career advancement opportunities").

Second, while Trooper Brown's four-day suspension without pay and censure in early February post-dated the EEO Complaint, that disciplinary action was based on the courtesy transport of his goddaughter on November 5, 2015, which occurred prior to the filing of the EEO Complaint, and Plaintiff admits that, unlike Sergeant Wetz who was not disciplined for a courtesy transport, Plaintiff did not seek approval prior to transporting his goddaughter. *See Brown*, 673 F.3d 141 at 150 (holding that "an employee does not suffer a materially adverse change in the terms and conditions of employment where the employer merely enforces its preexisting disciplinary policies in a reasonable manner").

Third, as explained above, Sergeant Wetz's alleged criticism of Plaintiff during Plaintiff's 2015 annual performance review in February 2016 and by writing in early March 2016 regarding Plaintiff's inadequate ticketing record, complaints regarding Plaintiff's overtime, and requiring Plaintiff to write a memorandum to the Major after he overslept one day, do not constitute adverse employment actions where Plaintiff has not alleged that any of these events materially changed his

conditions of employment. *E.g., Nicastro v. Runyon,* 60 F, Supp.2d 181, 186 (S.D.N.Y. 1999) (excessive scrutiny does not constitute adverse action). The fact that the Sergeant who replaced Sergeant Wetz was not as critical of Plaintiff also does not convert the aforementioned incidents into adverse employment actions because Plaintiff has not alleged that they materially altered his conditions of employment.

Accordingly, Plaintiff has failed to state a retaliation claim against Sergeant Wetz.

### 2.   *Sergeant Weatherwax*

The only allegations specifically against Sergeant Weatherwax within the First Amended Complaint are that Sergeant Weatherwax became the Wappingers Fall station commander in 2017 (FAC ¶ 54), that "the discriminatory treatment under Sergeant Weatherwax exacerbated" (*Id.* ¶ 55), and that "[d]espite Sergeant Kara speaking to Major Robert Gregory about having the surveillance unit look into [the loosening of the lug nuts on the patrol vehicle], it was deemed trivial by Weatherwax, who has failed to investigate the incident, and instead allowed such conduct to persist" (*Id.* ¶ 56). These are insufficient to plead retaliation.

First, Plaintiff fails to allege that Sergeant Weatherwax had any knowledge of his EEO claim, which was filed before Sergeant Weatherwax became station commander. Even if he had so alleged, "a gap of more than one year between protected activity and retaliatory action is generally insufficient." *Perry v. State of New York Dep't of Labor*, No. 08 CIV. 4610(PKC), 2009 WL 2575713, at *6 (S.D.N.Y. Aug. 20, 2009), *aff'd sub nom. Perry v. New York Dep't of Labor*, 398 F. App'x 628 (2d Cir. 2010) (summary order).

Second, even if Plaintiff had alleged that Sergeant Weatherwax knew of Plaintiff's protected activity, he has not alleged that Sergeant Weatherwax was involved in any adverse action. Sergeant Weatherwax's mere position as station commander is insufficient to allege that

he was personally involved. *Iqbal*, 556 U.S. at 676. The only personal involvement alleged is that Sergeant Weatherwax declined a request to have the surveillance unit investigate any tampering with Plaintiff's patrol car, which does not in and of itself count as an adverse action. Finally, to the extent Plaintiff alleges that the alleged mistreatment resulted from Sergeant Weatherwax's "gross negligence" and "deliberate indifference," such allegations do not amount to personal involvement. *See Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) ("[A]fter *Iqbal*, there is no special rule for supervisory liability. Instead, a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the [law].'" (quoting *Iqbal*, 556 U.S. at 676)); *see also Avillan v. Donahoe*, 483 F. App'x 637, 638 (2d Cir. 2012) (holding that "having his custodial route reassigned and having personal items removed from a locker" were not materially adverse actions).

Accordingly, the Section 1983 retaliation claim against Sergeant Weatherwax must also be dismissed.

### C. Qualified Immunity

Defendants contend that to the extent Plaintiff has stated any claims against them, they are entitled to qualified immunity. The Court has already determined that the only claim Plaintiff has pleaded is against Sergeant Wetz in his individual capacity for creating a hostile work environment based on Plaintiff's race. Accordingly, the Court need only consider whether Sergeant Wetz is entitled to qualified immunity.

Qualified immunity is an affirmative defense that protects government officials from civil liability when performing discretionary duties "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). In other words, government officials are entitled to immunity if they can establish that it was objectively reasonable for them to believe their actions

were lawful at the time. *Moore v. Vega,* 371 F.3d 110, 114 (2d Cir. 2004). "Usually, the defense of qualified immunity cannot support the grant of a [Rule] 12(b)(6) motion for failure to state a claim upon which relief can be granted." *McKenna v. Wright*, 386 F.3d 432, 435 (2d Cir. 2004) (emphasis and alterations omitted). Qualified immunity can only be granted at the motion to dismiss stage if "the facts supporting the defense appear on the face of the complaint . . . . [and] it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Id.* at 436 (internal quotation marks and citation omitted).

The Court has already determined that Plaintiff has stated a claim against Sergeant Wetz for subjecting him to a hostile work environment because of his race. Accordingly, it is not clear from the face of the complaint that Sergeant Wetz, who is alleged to have discriminated against Plaintiff on the basis of his race, is entitled to qualified immunity. Accordingly, the Court denies Defendants' motion as to qualified immunity. Sergeant Wetz can raise this affirmative defense in subsequent stages of this litigation. *See Behrens v. Pelletier*, 516 U.S. 299, 306 (1996) (noting that qualified immunity defense can be raised at successive stages of litigation).

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is GRANTED in part and DENIED in part. Defendants' motion is DENIED as to (1) Plaintiff's hostile work environment claim against Sergeant Wetz in his individual capacity under Section 1983 and the NYSHRL and (2) qualified immunity, and is GRANTED as to the remaining claims against Sergeant Wetz and all claims against the NYSP and Sergeant Weatherwax.

Accordingly, Defendant Wetz is directed to answer the remaining portions of the First Amended Complaint by April 5, 2021, and the parties are directed to file a completed case management plan on the docket (sample attached) by April 19, 2021. The Clerk of the Court is

respectfully directed to terminate the motion at ECF No. 37 and to terminate Defendants NYSP

and Sergeant Weatherwax.


Dated:   March 15, 2021                                    SO ORDERED:
         White Plains, New York


                                              NELSON S. ROMÁN
                                              United States District Judge

UNITED STATES DISTRICT COURT                    Rev. May 2014
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x


                                                    **CIVIL CASE DISCOVERY PLAN**
                              Plaintiff(s),          **AND SCHEDULING ORDER**

        - against -


                              Defendant(s).        _____ CV _____ (NSR)

-------------------------------------------------------------x

        This Civil Case Discovery Plan and Scheduling Order is adopted, after consultation with
counsel, pursuant to Fed. R. Civ. P. 16 and 26(f):

1.      All parties [consent] [do not consent] to conducting all further proceedings before
        a Magistrate Judge, including motions and trial, pursuant to 28 U.S.C. § 636(c).
        The parties are free to withhold consent without adverse substantive consequences.
        (If all parties consent, the remaining paragraphs of this form need not be
        completed.)

2.      This case [is] [is not] to be tried to a jury.

3.      Joinder of additional parties must be accomplished by _____.

4.      Amended pleadings may be filed until _____. Any party
        seeking to amend its pleadings after that date must seek leave of court via motion.

5.      Interrogatories shall be served no later than _____, and responses
        thereto shall be served within thirty (30) days thereafter.  The provisions of Local
        Civil Rule 33.3 [shall] [shall not] apply to this case.

6.      First request for production of documents, if any, shall be served no later than
        _____.

7.      Non-expert depositions shall be completed by _____.

        a.      Unless counsel agree otherwise or the Court so orders, depositions shall not
                be held until all parties have responded to any first requests for production
                of documents.

        b.      Depositions shall proceed concurrently.

        c.      Whenever possible, unless counsel agree otherwise or the Court so orders,

non-party depositions shall follow party depositions.

8.    Any further interrogatories, including expert interrogatories, shall be served no later than _____.

9.    Requests to Admit, if any, shall be served no later than _____.

10.   Expert reports shall be served no later than _____.

11.   Rebuttal expert reports shall be served no later than _____.

12.   Expert depositions shall be completed by _____.

13.   Additional provisions agreed upon by counsel are attached hereto and made a part hereof.

14.   **ALL DISCOVERY SHALL BE COMPLETED BY** _____.

15.   Any motions shall be filed in accordance with the Court's Individual Practices.

16.   This Civil Case Discovery Plan and Scheduling Order may not be changed without leave of Court (or the assigned Magistrate Judge acting under a specific order of reference).

17.   The Magistrate Judge assigned to this case is the Hon. _____.

18.   If, after entry of this Order, the parties consent to trial before a Magistrate Judge, the Magistrate Judge will schedule a date certain for trial and will, if necessary, amend this Order consistent therewith.

19.   The next case management conference is scheduled for _____, at _____. (The Court will set this date at the initial conference.)


SO ORDERED.

Dated: White Plains, New York
_____

_____
Nelson S. Román, U.S. District Judge